UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY GAIDRY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-279** |
| **LCMC HEALTH** | **SECTION: "G"(4)** |

## ORDER AND REASONS

This litigation arises from Defendant LCMC Health's ("LCMC") alleged termination of Plaintiff Mary Gaidry's ("Plaintiff") work assignment for her use of her service dogs at work.[1] Before the Court is LCMC's Partial Motion to Dismiss.[2] LCMC argues that the statute of limitations has expired for Plaintiff's claim under Section 504 of the Rehabilitation Act.[3] Plaintiff opposes the motion.[4] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies LCMC's motion.

## I. Background

Plaintiff worked as an ultrasound technician at New Orleans East Hospital ("NOEH") and Tulane Lakeside Hospital (TLH), which are operated by LCMC.[5] Plaintiff was contracted to work at LCMC's hospitals through a staffing agency, X-Tech.[6] Plaintiff has worked at NOEH on and off since 2007 and TLH since 2021.[7]

---

[1] Rec. Doc. 10.

[2] Rec. Doc. 6.

[3] *Id.* at 1.

[4] Rec. Doc. 7.

[5] Rec. Doc. 10 at 1–2.

[6] *Id.* at 2.

1

Plaintiff alleges that she uses service dogs to assist her with her disabilities.[8] She alleges that her service dogs "(a) alert her in the event of a blood pressure drop or impending tremors; (b) help with the PTSD by assisting her to calm down; and (c) steady her when she becomes dizzy."[9] According to Plaintiff, she first brought a service dog to work at NOEH in mid-2021.[10] Plaintiff alleges that she was "repeatedly subjected to harassment by staff members because they stated that they were afraid of the animals and did not want to be around them."[11] Plaintiff alleges that problems with her use of the service dogs, particularly the dog hair left behind, persisted through 2022 until she was informed by her supervisor at X-Tech, Ms. Jacob, on January 23, 2023 that she would not be permitted to work at any LCMC facility due to a perceived infection risk stemming from the presence of her service dogs.[12] Plaintiff alleges that she responded to this by requesting an accommodation for her service dogs.[13] Despite that January 23, 2023 conversation with Ms. Jacob, Plaintiff worked on January 30 and January 31, 2023.[14] Plaintiff alleges that on February 2, 2023, Ms. Jacob informed her that "Debbie from NOEH" changed her mind and would allow her to work at LCMC facilities if the dog hair situation was resolved.[15] Plaintiff alleges she spoke with Ms. Jacob again the following day, on February 3, 2023, to discuss the obligation to provide her

---

[7] *Id.*

[8] *Id.* at 2–3.

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.*

[12] *Id.* at 3–6.

[13] *Id.* at 6.

[14] *Id.*

[15] *Id.*

with reasonable accommodations and the dog hair issue.[16] Plaintiff alleges that she has not been scheduled to work at either NOEH or TLH since February 2023.[17]

Plaintiff brings a claim against LCMC under Title I of the Americans with Disabilities Act ("ADA") for reducing and eventually terminating Plaintiff's work schedule because of her disability and failing to provide her with reasonable accommodations.[18] Plaintiff also asserts a claim against LCMC under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") for employment discrimination based on Plaintiff's disability and failure to provide her reasonable accommodations for her disability.[19] Plaintiff seeks a declaratory judgment that LCMC discriminated against her because of her disability in violation of the ADA and the Rehabilitation Act, a permanent injunction requiring Defendant to provide Plaintiff with employment on the same terms and conditions prior to the restrictions imposed on her when she began bringing service dogs, back pay, compensatory damages, costs and attorney's fees.[20]

Plaintiff filed a complaint against LCMC with the Equal Employment Opportunity Council and received a right to sue letter on November 9, 2023.[21] Plaintiff filed a Complaint in this Court on January 31, 2024.[22] On April 1, 2024, Defendant filed the instant Partial Motion to Dismiss.[23]

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 7–8.

[19] *Id.* at 8.

[20] *Id.*

[21] *Id.* at 7.

[22] Rec. Doc. 1.

[23] Rec. Doc. 6.

On April 9, 2024, Plaintiff filed an opposition.[24] On April 15, 2024, with leave of Court, Plaintiff filed a First Amended Complaint.[25]

## II. Parties' Arguments

### A. *LCMC's Arguments in Support of Motion to Dismiss*

LCMC argues that Plaintiff's Rehabilitation Act claim should be dismissed because the state of limitations has expired.[26] According to LCMC, Rehabilitation Act claims are subject to the applicable state's limitations period for personal injury actions, which is one year under Louisiana law.[27] LCMC notes that the clock on that one year period generally starts "'the moment the plaintiff becomes aware that [she] has suffered an injury or has sufficient information to know that [she] has been injured.'"[28] Further, LCMC notes that "plaintiff's requisite knowledge to begin the running of the statute of limitations period 'is merely of the facts forming the basis of his cause of action, … not that of the existence of the cause of action itself.'"[29]

LCMC contends that the statute of limitations for Plaintiff's Rehabilitation Act claim began to run on January 23, 2023 because that is when Plaintiff alleges she was told she would no longer be allowed to work at any LCMC facility.[30] LCMC reasons that when Plaintiff filed the Complaint in this Court on January 31, 2024, the statute of limitations had expired.[31]

---

[24] Rec. Doc. 7.

[25] Rec. Doc. 10.

[26] Rec. Doc. 6 at 1.

[27] Rec. Doc. 6-1 at 2.

[28] *Id.* (citing *Smith v. Humphrey*, 540 Fed. App'x. 348, 349 (5th Cir. 2013) (citation omitted).

[29] *Id*. (citing *Webster v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. 13-6613, 2015 WL 4197589, at *4 (E.D. La. July 10, 2015) (Vance, J.).

[30] *Id.* at 3–4.

B.     *Plaintiff's Arguments in Opposition to Motion to Dismiss*

Plaintiff disputes that January 23, 2023 is when the one year statute of limitation began to accrue.[32] Rather, Plaintiff contends that February 3, 2023 is when the one year clock began to run because that is when Plaintiff was told she would not be scheduled for work the following week and consequently, has not been assigned a shift at LCMC hospitals since February 2023.[33] Plaintiff reasons that this is when LCMC "once and for all, denied the right to an accommodation regarding the use of her service dogs …"[34] Plaintiff contends that the January 23, 2023 meeting with Ms. Jacob was still a step in the interactive process that LCMC was required to engage in which Plaintiff requested reasonable accommodations.[35]

Plaintiff also argues that under the continuing violation doctrine, Plaintiff's request for an accommodation triggered a new cause of action that created a new statute of limitations period.[36] Plaintiff cites *National Railroad Passenger Corporation v. Morgan* and *Ledbetter v. The Goodyear Tire Rubber Company* as standing for the proposition that an employee who reviews his or her request for particular accommodations may bring suit based on a new "'discrete act'" of discrimination if the employer again denies his request.[37] Plaintiff notes that in *Morgan*, the Supreme Court held that "discrete acts such as termination, failure to promote, denial of transfer

---

[31] *Id.* at 4.

[32] Rec. Doc. 7 at 4–5.

[33] *Id.* at 5.

[34] *Id.*

[35] *Id.* at 4.

[36] *Id.* at 5–8.

[37] *Id.* at 6 (citing *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114 (2002); *Ledbetter v. The Goodyear Tire Rubber Co.*, 550 U.S. 618, 638 (2007)).

5

or refusal to hire" are separate, actionable incidents of discrimination.[38] Plaintiff notes that the doctrine is inapplicable to "discrete acts" of alleged discrimination that occur on a "particular day" but applies only to discriminatory conduct that takes place "over a series of days or perhaps years."[39] Plaintiff argues that because she made several requests for reasonable accommodations, each denial is a discrete act that forms the basis of a separate claim of discrimination that carried with it a new statute of limitations.[40] Plaintiff notes that in *Ledbetter*, the Supreme Court noted that "if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed."[41]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[42] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[43] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44] "Factual allegations must be enough to raise a right to relief above the speculative level."[45] A claim is facially plausible when the plaintiff has pleaded facts that allow

---

[38] *Id.* at 6 (quoting *Morgan*, 536 U.S. at 116–17)).

[39] *Id.* (quoting *Morgan*, 536 U.S. at 115).

[40] *Id.* at 7.

[41] *Id.* (quoting *Ledbetter*, 550 U.S. at 619).

[42] Fed. R. Civ. P. 12(b)(6).

[43] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[45] *Twombly*, 550 U.S. at 555.

the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[46]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[47] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[48] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[49] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[50] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[51] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[52] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[53] If factual allegations are insufficient to raise a right to relief above

---

[46] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[47] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[48] *Iqbal*, 556 U.S. at 678–79.

[49] *Id.* at 679.

[50] *Id.* at 678.

[51] *Id.*

[52] *Id.*

[53] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[54]

## IV. Analysis

LCMC argues that Plaintiff's Rehabilitation Act claim is time barred because she was informed by LCMC that she could no longer work at its facilities on January 23, 2023, but Plaintiff filed the Complaint in this Court on January 31, 2024.[55] Plaintiff counters that February 3, 2023 is when accrual began for the one year statute of limitations because that is when LCMC informed her she could no longer work at its facilities and actually stopped assigning her shifts.[56] Plaintiff also argues that her Rehabilitation Act claim is not time barred because of the continuing violation doctrine.[57]

*A.     Whether the Statute of Limitations for the Rehabilitation Act Claim has Expired*

### 1. Louisiana's One Year Statute of Limitations

The Rehabilitation Act prohibits discrimination against disabled individuals by entities receiving federal funding, as well as federal contractors and subcontractors.[58] The Rehabilitation Act does not provide a limitations period.[59] When a federal statute does not establish a limitations

---

[54] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[55] Rec. Doc. 6.

[56] Rec. Doc. 7.

[57] *Id.*

[58] 29 U.S.C. Section 794 ("No otherwise qualified individual with a disability in the United States … shall, solely by reasons of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance").

[59] *Strauss v. Bd. of Supervisors for University of Louisiana System*, Case No. 17-235, 2017 WL 4864496, at *3 (W.D. La. Oct. 6, 2017) (Whitehurst, M.J.). Report and Recommendation adopted, *Strauss v. Univ. of La. System Bd. of Supervisors*, No. 19-235, 2017 WL 4847526 (W.D. La. Oct. 26, 2017) (Foote, J.).

period for a federal cause of action, the general rule is that courts borrow the most analogous period from state law.[60] The Fifth Circuit has applied a state's limitation period for personal injury actions to Rehabilitation Act claims.[61] Therefore, Louisiana's one-year limitation period for personal injury actions applies.[62]

Although state law determines the limitations period for a Rehabilitation Act claim, federal law determines the particular accrual date of this federal cause of action.[63] Ordinarily, accrual occurs when a plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[64] To put it another way, accrual occurs "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[65] A plaintiff need not realize that a legal cause of action exists but only that the facts support such a claim.[66]

In *Frame v. City of Arlington*, the Fifth Circuit, construing the complaint in the plaintiffs' favor on a Rule 12(b)(6) motion to dismiss, found that the plaintiffs sufficiently alleged facts that make it plausible for the plaintiffs' Rehabilitation Act claim to have been brought within the statute of limitations.[67] The plaintiffs brought suit in Texas, where the statute of limitations for a personal

---

[60] *Frame v. City of Arlington*, 657 F.3d 215, 236–37 (5th Cir. 2011).

[61] *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 983 (5th Cir. 1992) (applied Texas' statute of limitations for personal injury actions to the plaintiff's Rehabilitation Act claim).

[62] La. Civ. Code art. 3492.

[63] *Frame*, 657 F.3d at 238.

[64] *Id.*

[65] *Id.*

[66] *See Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

[67] *Frame*, 657 F.3d at 240.

injury claim is two years.[68] The Fifth Circuit held that "there are issues of material fact as to when the plaintiffs knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks" because the plaintiffs alleged that "they were denied the benefits of the City's sidewalks '[w]ithin the last two years, if not also longer.'"[69] The Fifth Circuit reasoned that "[a]lthough this allegation leaves open the possibility that some of the plaintiffs' claims may be barred by limitations, it does not plead the plaintiffs out of their case."[70] The Fifth Circuit further reasoned that "[b]ecause the statute of limitations is an affirmative defense and not a pleading requirement, it is an issue that must be resolved through discovery and summary judgment or trial."[71]

Here, Plaintiff alleges that she spoke to Ms. Jacob at X-Techs on January 23, 2023 and Ms, Jacob informed Plaintiff that LCMC will not allow her to work at any LCMC facility due to a perceived infection risk stemming from the presence of her service dogs.[72] However, Plaintiff alleges that during this January 23, 2023 conversation, she "provided Ms. Jacob with information from the Centers for Disease Control and other sites discussing the incorporation of service animals into hospitals and reminded her of LCMC's legal obligation to provide reasonable accommodations."[73] Plaintiff alleges that on February 2, 2023 Ms. Jacob "informed her that while Debbie from NOEH had initially indicated that Plaintiff would no longer be able to work at LCMC

---

[68] *Id.* at 221.

[69] *Id.* at 240.

[70] *Id.*

[71] *Id.*

[72] Rec. Doc. 10 at 5–6.

[73] *Id.* at 6.

facilities, she had changed her mind" and Plaintiff would be allowed to work again if she addressed the dog hair situation.[74] Plaintiff alleges that she again spoke with Ms. Jacob on February 3, 2023, about reasonable accommodations and the dog hair issue, but they were "unable to reach an agreement or an understanding regarding assignments at LCMC [and] Ms. Jacob told Plaintiff that she would not be scheduled for the following week."[75] Plaintiff alleges that she has not been scheduled to work at the NOEH or TLH since February 3, 2023.[76]

Accepting Plaintiff's allegations as true, LCMC did not deny the reasonable accommodation request until sometime after February 3, 2023, when LCMC stopped assigning Plaintiff shifts altogether. When Plaintiff requested an accommodation in response to LCMC's notice that she would no longer be able to work at its facilities because of her service dogs, Plaintiff does not allege that LCMC denied that accommodation outright. It can be inferred that LCMC's offer, as communicated to Plaintiff on February 2, 2023, to allow Plaintiff to continue working at its facilities if she addresses the dog hair issue is a proposed accommodation in the interactive process, although one apparently not to Plaintiff's satisfaction. Therefore, Plaintiff has alleged that she was not put on notice of her injury until after February 3, 2023, when LCMC stopped assigning her shifts. Because Plaintiff filed the Complaint on January 31, 2024, Plaintiff has alleged sufficient facts to establish that her Rehabilitation Act claim was filed within the one-year statute of limitations.

---

[74] *Id.*

[75] *Id.*

[76] *Id.*

## V. Conclusion

Plaintiff alleges that when LCMC notified Plaintiff on January 23, 2023 that she would no longer receive work assignments at its facilities because of her service dogs, she requested an accommodation. LCMC responded on February 2, 2023 that she would be allowed to continue working at LCMC facilities if she addressed the dog hair issue. Plaintiff again requested an accommodation on February 3, 2023, but has not been assigned shifts since then. Therefore, January 23, 2023 is not when Plaintiff suffered the injury that triggered the start of the one year statute of limitations. Under Louisiana's one year statute of limitations for Plaintiff's Rehabilitation Act claim, Plaintiff's Rehabilitation Act claim is not time barred because the discrete act that put Plaintiff on notice of her injury was when LCMC stopped assigning Plaintiff work after her February 3, 2023 accommodation request.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant LCMC Health's "Partial Motion to Dismiss"[77] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this __8th__ day of May, 2024.

                                    **NANNETTE JOLIVETTE BROWN**
                                    **CHIEF JUDGE**
                                    **UNITED STATES DISTRICT COURT**

---

[77] Rec. Doc. 6.